Richard A. Tamor, Esq.
TAMOR & TAMOR
1901 Harrison St., 9th Floor
Oakland, CA 94612
Tel. (510) 874-4170
Fax (510) 874-4174
web: www.TamorLaw.com

Attorneys for Defendant,
Michael Northcutt

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  CR-07-00669 SI |
| Plaintiff, | ) | |
| | ) | NOTICE OF MOTION AND MOTION |
| vs. | ) | TO SUPPRESS EVIDENCE SEIZED |
| | ) | FROM SEARCH WARRANT; |
| | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT |
| MICHAEL NORTHCUTT, | ) | THEREOF |
| Defendant. | ) | Date: May 23, 2008 |
| | ) | Time: 11:00 A.m. |
| | ) | Court: Hon. Susan Illston |
| | ) | |
| | ) | |
| | ) | |
| ———————————————— | ) | |

TO:    JOSEPH RUSSONIELLO, UNITED STATES ATTORNEY; ANDREW CAPUTO, ASSISTANT UNITED STATES ATTORNEY

PLEASE TAKE NOTICE that on May 23, 2008, at 11:00 a.m., or as soon thereafter as

the matter may be heard in the above-entitled court, defendant Michael Northcutt, by and

through his counsel, will move the court for an order that the search warrant named below be

quashed and the evidence listed below and any fruits thereof be suppressed on the grounds that

it was obtained as a result of an illegal search warrant in violation of the defendant's rights under the Fourth Amendment to the United States Constitution.

The evidence to be suppressed consists of all tangible and intangible evidence obtained as the result of the following illegal acts:

The service of an illegal search warrant upon and the search of Michael Northcutt and his residence at 639 Central Avenue, San Francisco.

Mr. Northcutt requests this Court to suppress the following evidence and all fruits derived therefrom: Suspected rock cocaine, suspected marijuana, box of ammunition, indicia, "rap song," handgun, rifle, cell phone, U.S. Currency, photographs of the scene, all observations of officers and other witnesses; and all fruits deriving therefrom.

Mr. Northcutt asserts a reasonable expectation of privacy in the area searched and/or the items seized, and is prepared to prove the same at the hearing on the motion.

These motions are based upon this Notice, the attached Memorandum of Points and Authorities and exhibits, the files and records of this case, and any evidence, argument or authorities to be presented at the hearing on the motions.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant Michael Northcutt requests that this court suppress the evidence seized at his residence because the warrant application failed to establish probable cause for the search. The conclusory warrant affidavit failed to demonstrate the requisite nexus between the evidence sought and Mr. Northcutt's residence, and failed to establish probable cause to believe that Mr. Northcutt was a gang member who kept firearm related evidence at his home. Moreover, whether or not the warrant itself was valid, the officers flagrantly disregarded the terms of the

–2–

warrant, requiring suppression of all the items seized.  Finally, even if this court denies

suppression of all the items seized (i.e., suspected rock cocaine, suspected marijuana, box of

ammunition, indicia, "rap song," handgun, rifle, cell phone, U.S. Currency, photographs of the

scene, all observations of officers and other witnesses; and all fruits deriving therefrom),

defendant requests that at minimum, this court suppress the rap song, cell phone, and U.S.

currency, which were beyond the scope of the warrant.

## II. <u>STATEMENT OF FACTS</u>

On August 7, 2007, Officer Kevin Murray (#4032) of the San Francisco Police

Department filed a warrant application with the San Francisco County Superior Court to search

Mr. Northcutt's residence for the following:

> (1)    firearms and associated items, and indicia showing that Mr. Northcutt lived at
>
>        the residence; and
>
> (2)    evidence of street gang membership

(Exh. "A").   In his affidavit, he sets forth the following allegations pertaining to probable cause

that evidence of a crime would be found at the location.

Twelve days before the warrant application, on July 26, 2007, Officer Nocetti (#394)

was contacted by a confidential reliable informant ("CRI").  No further information was given

about the CRI.

The CRI said that he saw a Black man, who was the sole occupant of and was driving a

white Ford Taurus with a license plate ending in R301 in the 6th/Market St. area, in possession

of a firearm similar to a "Desert Eagle" handgun.  He further said that the vehicle was

northbound on Taylor St. toward Turk St. within the past several minutes of speaking with Off.

Nocetti.  Officer Nocetti then relayed this information to the Tenderloin Station.

–3–

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Suppress Evidence
Seized from Search Warrant
<u>United States v. Northcutt</u> - CR-07-00669 SI

Pursuant to the Tenderloin Station's broadcast of the suspect and suspect vehicle description. Officers Madsen (#1166), Laval (#4016), and Kim (#975) activated their lights and siren upon seeing a vehicle matching the description near 6th and Market (white Ford Taurus with tinted windows, CA license #5YFR301, Black male driver). With Off. Mehan (#109), they conducted a "felony stop" of the vehicle, ordered the driver out, who complied and laid prone on the ground. Officers Madsen and Kim then conducted a "protective sweep" of the car and found a black handgun lying on the floorboard, with the tip of the floorboard, at the tip of the barrel protruding form underneath the right front passenger seat.

At the Tenderloin Station, the driver, Mr. Northcutt, agreed to talk after being read his Miranda rights. He denied knowledge of the gun, even though he had been driving the car for the past three days. He also said he stays at 639 Central Avenue.

A computer check revealed Mr. Northcutt's address at 639 Central Ave. and a criminal history showing that he was recently off parole with two prior felony convictions for violations of California Health and Safety Code Sections 11351.5 and 11352 (a).

In his affidavit, Officer Murray states that the search's objective was to "establish that Michael Northcutt possessed the firearm prior to the actual arrest." With respect to his purported probable cause to believe that the items sought would be found in Mr. Northcutt's residence, Off. Murray documents his experience and assignment in the Gang Task Force and states, "Through my training and experience I know that gang members will often keep additional firearm related evidence in their residences." To connect Mr. Northcutt to his belief relating to gang members, Officer Murray says only that "Michael Northcutt is a documented gang member of the criminal street, Central Divis Playas (CDP)." He gives no other information, dates, bases or documentation.

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Suppress Evidence Seized from Search Warrant
United States v. Northcutt - CR-07-00669 SI

The Hon. Peter J. Busch granted the warrant **as to firearms and indicia only**. **He Denied the authorization to search for evidence of gang membership**. Thus, the search warrant authorized the officers to seize firearms, gun magazines, gun cleaning equipment, firearms holsters, ammunition and indicia in the name of Michael Northcutt. It did not authorize – **and in fact the state court judge lined out reference to** – "evidence of street gang membership or affiliation with the 'Central Divis Playas' (CDP), including documents, photographs, drawings, writings, gang paraphernalia...and graffiti...."

The police seized suspected rock cocaine, suspected marijuana, a box of ammunition, a handgun, a rifle, a cell phone, indicia relating to the defendant, and a "rap song" on a sheet of white paper. They also photographed the scene. The defendant subsequently made a statement that was recorded.

### III. DISCUSSION

**A.    THIS COURT SHOULD SUPPRESS THE SEIZED EVIDENCE BECAUSE THE WARRANT APPLICATION DID NOT DEMONSTRATE PROBABLE CAUSE TO BELIEVE THAT THE ITEMS SOUGHT WOULD BE FOUND AT THE RESIDENCE**

The Supreme Court has consistently maintained that the Fourth Amendment strongly protects privacy interests in the home. In *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984), the Court decreed that "it is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *See also*, *United States v. Becker*, 23 F.3d 1537, 1539 (9th Cir. 1994) ("[t]he sanctity of a person's home, perhaps our last real retreat in this technological age, lies at the very core of the rights which animate the amendment").

Probable cause to believe that a suspect committed a crime does not automatically generate probable cause to search the suspect's home. *United States v. Valenzuela*, 596 F.2d

824, 828 (9th Cir. 1979). "The critical element in a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily* 436 U.S. 547, 556 (1978). "It cannot follow in all cases, simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence." *Valenzuela*, 596 F.2d at 828. Before permitting a search of a residence, a magistrate judge must conclude that a "reasonable nexus" exists between the evidence sought and the residence. *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002).

In the present case, the affidavit establishes probable cause that Mr. Northcutt committed the crime of possessing a firearm. However, it fails to establish probable cause to search his residence in that it fails to set forth a "reasonable nexus" between the firearm and the residence. Officer Murphy does **not** claim that persons arrested for guns often have other guns in their residences. His only claims for probable cause are the following conclusory assertions: (1) that Mr. Northcutt is a "documented gang member" of "Central Divis Playas," and (2) that "gang members will often keep additional firearm related evidence in their residences." If such were sufficient to establish probable cause to search Mr. Northcutt's residence, then every "documented" gang member would be subject to a search of his or her residence for firearms. As more fully discussed below, such assertions do not establish the requisite probable cause.

>            1.    The Conclusory Affidavit Fails to Establish Probable Cause to Believe
>                  that Mr. Northcutt Is a Gang Member

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const., amend. IV. Probable cause cannot be established

by an affidavit that is "purely conclusory in stating the affiant's belief that probable cause exists **without detailing any of the underlying circumstances upon which that belief is based**." *Giordenello v. United States* 357 U.S. 480, 486 (1958)(emphasis added)(relating to arrest warrant); *United States v. Harris* 403 U.S. 573, 588 n.2 (1971)(analysis of probable cause for arrest and search warrants "basically the same").

In *Giordenello*, the affidavit in question stated "[t]hat on or about January 26, 1956, at Houston, Texas in the Southern District of Texas, Veto Giordenello did receive, conceal, etc. narcotics drugs, to-wit: heroin hydrochloride with knowledge of unlawful importation; in violation of Section 174, title 21, United States Code." *Giordenello*, 357 U.S. at 481. In assessing its sufficiency, the Supreme Court noted that the particularity requirement allows a neutral and detached magistrate to draw inferences from the facts, rather than allowing an officer who is "engaged in the often competitive enterprise of ferreting out crime" to judge for himself the existence of probable cause:

> The purpose of the complaint, then is to enable the appropriate magistrate, here a Commissioner, to determine whether the "probable cause" required to support a warrant exists. The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime.

*Id*. at 486.

The *Giordenello* court then held that the affidavit in that case, which recited no more than the elements of the crime charged, did not pass muster because it provided no basis for the Commissioner's determination that probable cause existed. It contained no affirmative allegation that the affiant spoke with personal knowledge; it did not indicate any sources for the affiant's belief; and it did not set forth any other sufficient basis upon which a finding of

–7–

probable cause could be made. *Id*.  The deficiencies "could not be cured by the Commissioner's reliance upon a presumption that the complaint was made on the personal knowledge of the complaining officer," and under those circumstances, the Commissioner could not "be expected to assess independently the probability that petitioner committed the crime charged." *Id*. at 486-487.  If the affidavit in that case were upheld, it would only be of formal significance, and its protective purposes defeated. *Id*.

Similarly, the affidavit in this case fails to provide any basis for the court's determination that probable cause existed to believe that Mr. Northcutt is a gang member.  The bald assertion that he "is a documented gang member" of "Central Divis Playas" was made without any explanation. Documented by whom? Other gang members? Graffiti on the wall? The affidavit contains no affirmative allegation that Off. Murray spoke with personal knowledge of Mr. Northcutt's alleged gang activities nor did it indicate any sources for his belief that Mr. Northcutt is a gang member.  Other than recite that Mr. Northcutt is a gang member, the affidavit does not set forth any facts from which the court may determine that Mr. Northcutt is indeed a gang member.  Justifiably, **Judge Busch flatly rejected  Off. Murray's conclusory assertion of Mr. Northcutt's gang membership** as a basis for believing that gang paraphernalia would be found at the home.  Having failed to establish probable cause that Mr. Northcutt is a gang member, the equally bald assertion that "through my training and experience I know that gang members will often keep additional firearm related evidence in their residences" does nothing to connect Mr. Northcutt to this assertion or establish that firearm related evidence will be found at his residence.

///

///

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Suppress Evidence Seized from Search Warrant
United States v. Northcutt - CR-07-00669 SI

2.    The Conclusory Affidavit Fails to Establish that Gang Members Keep
Firearm Related Evidence in Their Residences

Even if there was probable cause to believe that Mr. Northcutt was a gang member, the assertion that "through my training and experience I know that gang members will often keep additional firearm related evidence in their residences" falls short of establishing probable cause to believe that firearm related evidence will be found in Mr. Northcutt's residence.  The affidavit does not establish that Officer Murphy had any formal training on gangs.  His affidavit states that he is "currently assigned" to the Gang Task Force, but it does not state how long he has been so assigned.  His numerous duties, if done for sufficient time, would lead a person to know about gangs.   However, since he did not document how long he had been performing them, a list of tasks does not educate the magistrate about his actual experience.

Moreover, there is no consensus among courts permitting a generalized suspicion regarding what gang members keep at their residences, to the same degree as drug dealers.  For example, in *Chavez-Miranda* and *Valenzuela*, *supra*, involving the search of drug dealers' residences for drug-related evidence, the courts upheld the warrants.  In both cases, the courts recognized that in narcotics cases, "evidence is likely to be found where the dealers live." *Chavez-Miranda*, 306 F.3d at 978; *Valenzuez*, 596 F.2d at 829 ("[i]t is commonplace for dealers of heroin to have heroin that  is packaged for sale in the place where they live or sell from, their vehicles or on their persons").

In addition to this generalization, the affidavits in both cases stated sufficient facts to believe that the suspects indeed kept drug-related items in their home. In *Chavez-Miranda*, the suspected supplier traveled to and from his apartment at times and in a manner that appeared consistent with heroin being stored there.  After a controlled buy, the suspected supplier drove

to his apartment, stayed briefly, then drove back to a location where someone was seen leaning into his car, and moments later, a drug dealer called the informant to state that he now had the heroin. *Chavez-Miranda*, 306 F.3d at 978-979.  In *Valenzuela*, the affidavit disclosed that an informant had seen drug deliveries by the suspect several times, and the officer, acting on the informant's tip, saw the suspect leave his house and drive to the apparent narcotics transaction. *Valenzuela*, 956 F.2d at 828.

In contrast, in the present case, the affidavit states **no facts** establishing the existence of gun-related evidence in Mr. Northcutt's house.  Officer Murray relies only on his "training and experience" that "gang members will often keep additional firearm related evidence in their residences."  But unlike drug dealers' use of their residences to store drug-related items, no such  generalization has been recognized by the courts to exempt gang members from the particularity requirement.  If that were so, then every "documented" gang member would be subject to a search of his or her residence.

Evidence seized as the result of a search and seizure that has exceeded permissible bounds  is the "fruit of the poisonous tree" and must be excluded. *Wong Sun v. United States*, 371 U.S. 471 (1973).  As such, all evidence seized based on the unlawful warrant, all observations of officers and other witnesses, and all evidence derived therefrom must be excluded.

**B.     WHETHER OR NOT THE WARRANT ITSELF WAS VALID, THIS COURT SHOULD SUPPRESS ALL ITEMS SEIZED BECAUSE THE OFFICERS FLAGRANTLY DISREGARDED THE TERMS OF THE WARRANT**

Ordinarily, only evidence that is obtained in violation of a warrant is suppressed. *United States v. Chen*, 979 F.2d 714, 717 (9th Cir. 1992).  However, in cases where there is a "flagrant

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Suppress Evidence Seized from Search Warrant
United States v. Northcutt - CR-07-00669 SI

disregard" for the terms of the warrant, the district court may suppress all of the evidence, including evidence that was not tainted by the violation. *Id.*  While courts have refused to suppress all evidence where agents who exceeded their authority under the warrant "were motivated by considerations of practicality rather than by a desire to engage in indiscriminate 'fishing'," wholesale suppression is appropriate when "officers transform the search into an impermissible general search by ignoring the terms of the warrant and engaging in indiscriminate fishing." *Id.*

For example, in *United States v. Rettig*, 589 F.2d 418 (9th Cir. 1978), the government agents were issued a warrant to search for evidence of marijuana possession, but they ignored the limitations of the warrant and searched for evidence of a cocaine conspiracy despite the fact that the government had earlier been denied a warrant to conduct such a search. *Id.* at 420-22. In determining whether or not the search was confined to its lawful scope, the *Rettig* court considered "both the purpose disclosed in the application for a warrant's issuance and the manner of its execution." *Id.* at 423.  Finding that the agents "did not confine their search in good faith to the objects of the warrant, and that while purporting to execute it, they substantially exceeded any reasonable interpretation of its provisions," the *Rettig* court suppressed all evidence, including those not tainted by the violation. *Id.*

This case is closely analogous to *Rettig*.  In this case, the officers were issued a warrant to search for evidence of prior gun possession, but they ignored the limitations of the warrant and searched for evidence of gang membership, **despite the fact that they had been denied a warrant to conduct such a search**.  This is not a situation where the officers did not read or failed to fully understand the terms of the warrant. *See, e.g., United States v. Whitten*, 706 F.2d 1000, 1009-10 (9th Cir. 1983) (no flagrant disregard although agents did not read or fully

–11–

understand the terms of the warrant).  In this case, the court denied and specifically struck out the request to search for gang indicia, and Off. Murray signed his initials and badge number next to the delineation.  Yet the officers seized a "rap song" written on a piece of paper, in direct violation of the court's order.  They seized a cell phone, which undoubtedly contains telephone numbers and evidence of gang membership and the members.  The willingness of the police to exceed the scope of their authority betrays their eagerness to link Mr. Northcutt to a gang and constitutes a "flagrant disregard" of the terms of the warrant and its limitations.

Indeed, the warrant affidavit does not support a search for guns, and the officers needed to "bootstrap" Mr. Northcutt's suspected gang affiliation into the warrant application. **Without evidence of Mr. Northcutt's gang affiliation,  the search for gun-related evidence at his residence lacked probable cause**, because according to Off. Murray, Mr. Northcutt's alleged gang affiliation provided the "nexus" between the evidence and his residence: "Through my training and experience I know that gang members will often keep additional firearm related evidence in their residences." (Exh. "A") Thus, if Mr. Northcutt was not a gang member, the officers had no probable cause to search his residence. The officers needed to search for gang indicia, in spite of the warrant's limitations, in order to maintain the warrant's validity.  If it were not so, there was no reason to request a search for gang indicia, unless a search for gang indicia was the officers' real purpose.

When viewed as a search for gang evidence, the affidavit makes sense.  Though the police clearly did not have any evidence that Mr. Northcutt was a gang member, they apparently had a  suspicion and wanted to search his house for gang evidence.  They sought permission to search for guns and bootstrapped the gang request in hopes that the magistrate would fail to recognize that the entire warrant lacked probable cause.

-12-

1  ///

2     **C.     AT MINIMUM, THIS COURT SHOULD SUPPRESS THE SEIZED
3              ITEMS THAT WERE BEYOND THE SCOPE OF THE WARRANT**

4        "The requirement that warrants shall particularly describe the things to be seized makes

5  general searches under them impermissible and prevents the seizure of one thing under a

6  warrant describing another.  As to what is to be taken, nothing is left to the discretion of the

7  officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927).

8        The search warrant authorized the deputies to seize weapons-related evidence.  It did not

9  authorize – and in fact the state court lined out reference to – "evidence of street gang

10 membership or affiliation with the 'Central Divis Playas' (CDP), including documents,

11 photographs, drawings, writings, gang paraphernalia...and graffiti...."  Nevertheless, officers

12 seized what is described in the police report as "Rap song on one sheet of white paper."  This is

13 a writing, seized in violation of the magistrate's direct order. So is the cell phone, which

14 contains electronic writing that may be probative of gang affiliation and memberships.  These

15 items  must be suppressed as beyond the scope of the warrant.

16       Moreover, the cell phone and U.S. currency are not contraband.  As such, they must be

17 suppressed. *Horton v. California*, 496 U.S. 128, 136-137 (1990).

18                      **IV. <u>CONCLUSION</u>**

19       Based on the foregoing, defendant Michael Northcutt respectfully requests that this Court

20 issue the order suppressing the evidence requested.

21

22 ///

23

24 ///

25

26                                            –13–

1

2   Dated: April 25, 2008

Respectfully Submitted,
TAMOR & TAMOR

3

4

_____/s/_____
Richard A. Tamor, Esq.
Attorneys for Defendant,
Michael Northcutt

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

–14–

27   Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Suppress Evidence
Seized from Search Warrant
United States v. Northcutt - CR-07-00669 SI

1

2

3

4

5

6

7

8

9

10

11

# EXHIBIT A

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Suppress Evidence
Seized from Search Warrant
United States v. Northcutt - CR-07-00669 SI

# San Francisco Police Department
## INCIDENT REPORT

**Report Type: Initial**

**070754986**

| INCIDENT | | | |
|---|---|---|---|
| Incident Number: 070-754-988 | Occurrence from Date/Time 07/26/07 11:13 | Occurrence to Date/Time 07/26/07 11:13 | Reported Date/Time | CAD Number 072071401 |

**Type of Incident**
Firearm, Possession of Loaded -12100, Firearm, Loaded, in Vehicle, Possession or Use -12160, Firearm, Possession By Prohibited Person -12080

**Location of Occurrence**
Market Street

**At Intersection with/Premise type**
Taylor Street   Street, (Not Sidewalk)

| Confidential Report? ☐ | Arrest Made? ☑ | Suspect Known? ☐ | Suspect Unknown? ☐ | Non-Suspect Incident? ☐ | Domestic Violence? ☐ | (Type of Weapon Used) | Reporting Unit 4T1E |
|---|---|---|---|---|---|---|---|

**Location Sent**
On view

| How Cleared? 6 | Reported to Bureau Crime Scene Invest. | Name Gee | Star 574 | Date/Time 07/26/07 12:40 | Elder Victim ☐ | Gang Related? ☑ | Juvenile Subject? ☐ | Prejudice Based? ☐ |
|---|---|---|---|---|---|---|---|---|

### OFFICER DECLARATION

I declare under penalty of perjury, this report of ___7___ pages is true and correct, based on my personal knowledge, or is based on information and belief following an investigation of the events and parties involved.

PROP 115 CERTIFIED   5 YEAR/POST   Signature:

| Reporting Officer MARK H. MANSEN | Star 1166 | Station Crime Prevention Co. | Watch 0700-1700 | Date |
|---|---|---|---|---|
| Reviewing Sgt. Glenn Mar # 1829 CPC / Tactical Unit | Star 1829 | Station Crime Prevention Co. | Watch 0700-1700 | Date |
| OIC Sgt. Glenn Mar # 1829 CPC / Tactical Unit | | Station TACTICAL CO. | Watch 0700-1700 | Date 07/26/07 |

| Related Case # | Assigned to 6G200 Copies to 6G200 | Assigned to 5G200 5G200 5G200 | Assigned to Add'l Copies TTF, DA2 | 1829 |
|---|---|---|---|---|

### REPORTEE

| Code R | Name (Last, First Middle) SFPD #304, | | Alias |
|---|---|---|---|

| Day Phone (415) 345-7300 | Type | Home Address | City | State | Zip Code |
|---|---|---|---|---|---|
| Night Phone | Type | Work Address Tenderloin Police Station | City | State | Zip Code |

| DOB / | Age | DOB Unk. ☐ | or age between: and | Race | Sex | Height | Weight | Hair Color | Eye Color | ID Type Jurisd. | ID No. |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Confidential Person ☐ | Violent Crime Notification ☐ | 293 PC Notification ☐ | Star | Follow-up Form YES ☐ | Statement YES ☐ | Relationship to Subject |
|---|---|---|---|---|---|---|

| School (if Juvenile) | Injury/Treatment | Other Information/If Interpreter Needed Specify Language |
|---|---|---|

### BOOKED 1

| Code B 1 | Name (Last, First Middle) Northcutt, Michael D. | | ALIAS |
|---|---|---|---|

| Day Phone | Type | Home Address 639 Central | City San Francisco | State CA | Zip Code |
|---|---|---|---|---|---|
| Night Phone | Type | Work Address | City | State | Zip Code |

| DOB Unknown | Date of Birth 10/15/80 | Age 26 | or age between and | Race B | Sex M | Height 6'03 | Weight 200 | Hair Color BLK | Eye Color BRO |
|---|---|---|---|---|---|---|---|---|---|

| SFNO 544748 | J/D# (if Juvi.) | ID Type/Jurisdiction/Number DL   CA   D1388448 | ID Type/Jurisdiction/Number | ID Type/Jurisdiction/Number |
|---|---|---|---|---|

| Book Section #1 N/W 12021a.PC | Book Section #2 N/W 12025b.1PC | Book Section #3 N/W 12025b.6PC | Book Section #4 12031a.1PC | Book Section #5 186.22 PC | Booking Location Tenderloin Station |
|---|---|---|---|---|---|

| Warrant # | Court # | Action # | Dept | Enroute to | CWB Check Lena | Star 56 |
|---|---|---|---|---|---|---|

| Warrant Violation(s) | | | | Bail | Mirandized ☑ Star | Date 07/28/07 | Time | Statement ☑ |
|---|---|---|---|---|---|---|---|---|

| Citation # | Violation(s) | | | Appear Date/Time | Location of Appearance |
|---|---|---|---|---|---|

| Book/Cite Approval Sgt. Mar | Star 1829 | Mass Arrest Code | M X-Rays ☐ | School (if Juvenile) | ☐ CA Form Booked Copy Attached |
|---|---|---|---|---|---|

**Other Information:** Citation/Warrant/Booking Charge(s)/Missing Person-Subject Description; Scars, Marks, Tatoos
Wearing white T-shirt, blue jeans, red boots

07/26/2007   20:00   SFPD TACTICAL → 95539210                      NO.996   P03

# 070754986

## San Francisco Police Department
### PROPERTY LISTINGS

| E 1 | Code/No<br>EVD 1 | Item Description<br>"Office Depot" 2HD IBM Format 1.44 MB Disks | | | | Brand<br>Office Depot | Model | |
|---|---|---|---|---|---|---|---|---|
| | Serial No. | Gun Make | Caliber | Color | | Narcotics Lab No. | Quantity<br>2 | Value |
| | Seized by (Star) | From Where | | | | | | |
| | Additional Description/Identifying Numbers<br>Disks containing photo's of the firearm taken by CSI from TTF. Beretta 96 .40 Caliber Serial #Ber012773M(E-4) | | | | | | | |

| E 2 | Code/No<br>EVD 2 | Item Description<br>SFPD Statement form #377G | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|
| | Serial No. | Gun Make | Caliber | Color | | Narcotics Lab No. | Quantity | Value |
| | Seized by (Star) | From Where | | | | | | |
| | Additional Description/Identifying Numbers<br>Written by Off. Meehan #109 | | | | | | | |

| E 3 | Code/No<br>EVD 3 | Item Description<br>SFPD Statement form #377G | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|
| | Serial No. | Gun Make | Caliber | Color | | Narcotics Lab No. | Quantity | Value |
| | Seized by (Star) | From Where | | | | | | |
| | Additional Description/Identifying Numbers<br>Written by Off. Nocetti #394 | | | | | | | |

| E 4 | Code/No<br>EVD 4 | Item Description<br>Black semi-auto handgun, loaded | | | | Brand<br>Beretta | Model<br>96 | |
|---|---|---|---|---|---|---|---|---|
| | Serial No.<br>BER012773M | Gun Make | Caliber<br>.40 | Color<br>BLK | | Narcotics Lab No. | Quantity | Value |
| | Seized by (Star)<br>975 | From Where<br>Underneath the right front passenger seat of vehicle (F) | | | | | | |
| | Additional Description/Identifying Numbers | | | | | | | |

| | Code/No | Item Description | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|
| | Serial No. | Gun Make | Caliber | Color | | Narcotics Lab No. | Quantity | Value |
| | Seized by (Star) | From Where | | | | | | |
| | Additional Description/Identifying Numbers | | | | | | | |

| | Code/No | Item Description | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|
| | Serial No. | Gun Make | Caliber | Color | | Narcotics Lab No. | Quantity | Value |
| | Seized by (Star) | From Where | | | | | | |
| | Additional Description/Identifying Numbers | | | | | | | |

| | Code/No | Item Description | | | | Brand | Model | |
|---|---|---|---|---|---|---|---|---|
| | Serial No. | Gun Make | Caliber | Color | | Narcotics Lab No. | Quantity | Value |
| | Seized by (Star) | From Where | | | | | | |
| | Additional Description/Identifying Numbers | | | | | | | |

Incident# 070754986                                                      Page 2 of 7

# San Francisco Police Department
## VEHICLE INFORMATION

**070754986**

VEHICLE CODES:  B -BOOSTED; D -DAMAGED; F -USED FELONY; T -TOWED; U -USED OTHER; V -VANDALIZED; X -STRIPPED

### VEHICLE INFORMATION

| Code | Plate No. | State | Reg Yr | Plate Type | VIN No. |
|------|-----------|-------|--------|------------|---------|
| F | 5YFR301 | CA | 2008 | PC | 1FAFP57S1WG256583 |

| Veh Year | Make | Model |
|----------|------|-------|
| 1998 | Ford | Taurus |

| Style | Color | Plates/VIN Match? | Plates Missing? |
|-------|-------|-------------------|-----------------|
| Station Wagon | White | ☑ | FRONT ☐ REAR ☐ |

| Condition (Check all that apply) | Damage | Point of Entry |
|---|---|---|
| APPARENTLY DRIVABLE ☑  BURNED? ☐  DAMAGED? ☐  STRIPPED? ☐ | | |

| Crime Scene Tech. Notified? ☐ | 387 Form Given to Owner? ☐ | Tow Approved By (Name) Sgt. Mar | Star 1829 | Towed to (Name/Address) Auto Return | Tow Check (Name) | Star |
|---|---|---|---|---|---|---|

| Hold For Other (narrative) | Other Information |
|---|---|

#### OWNER

| Registered Owner Business Name/Last Name, Evans | First Name Lakia | Residence Phone |
|---|---|---|

| Residence Address 968 Ellsworth | City San Francisco | State CA | Zip | Business Phone |
|---|---|---|---|---|

### VEHICLE INFORMATION

| Code | Plate No. | State | Reg Yr | Plate Type | VIN No. |
|------|-----------|-------|--------|------------|---------|
| | | | | | |

| Veh Year | Make | Model |
|----------|------|-------|
| | | |

| Style | Color | Plates/VIN Match? | Plates Missing? |
|-------|-------|-------------------|-----------------|
| | | ☐ | FRONT ☐ REAR ☐ |

| Condition (Check all that apply) | Damage | Point of Entry |
|---|---|---|
| APPARENTLY DRIVABLE ☐  BURNED? ☐  DAMAGED? ☐  STRIPPED? ☐ | | |

| Crime Scene Tech. Notified? ☐ | 387 Form Given to Owner? ☐ | Tow Approved By (Name) | Star | Towed to (Name/Address) | Tow Check (Name) | Star |
|---|---|---|---|---|---|---|

| Hold For | Other Information |
|---|---|

#### OWNER

| Registered Owner Business Name/Last Name, | First Name | Residence Phone |
|---|---|---|

| Residence Address | City | State | Zip | Business Phone |
|---|---|---|---|---|

### VEHICLE INFORMATION

| Code | Plate No. | State | Reg Yr | Plate Type | VIN No. |
|------|-----------|-------|--------|------------|---------|
| | | | | | |

| Veh Yr | Make | Model |
|--------|------|-------|
| | | |

| Style | Color | Plates/VIN Match? | Plates Missing? |
|-------|-------|-------------------|-----------------|
| | | ☐ | FRONT ☐ REAR ☐ |

| Condition (Check all that apply) | Damage | Point of Entry |
|---|---|---|
| APPARENTLY DRIVABLE ☐  BURNED? ☐  DAMAGED? ☐  STRIPPED? ☐ | | |

| Crime Scene Tech. Notified? ☐ | 387 Form Given to Owner? ☐ | Tow Approved By (Name) | Star | Towed to (Name/Address) | Tow Check (Name) | Star |
|---|---|---|---|---|---|---|

| Hold For | Other Information |
|---|---|

#### OWNER

| Registered Owner Business Name/Last Name, | First Name | Residence Phone |
|---|---|---|

| Residence Address | City | State | Zip | Business Phone |
|---|---|---|---|---|

**070754986**

San Francisco Police Department
**NARRATIVE**

While on directed patrol in the Mission District, Officer Laval #4016, Officer Kim #975 and I were redirected by our Communications Division to the Tenderloin District on a call of a man with a gun. We were in full uniform and in a marked patrol vehicle. Communications advised us that a black male adult was driving a white Ford Taurus station wagon in the area of Market St. and Taylor St. The vehicle had tinted windows and the license plate was described as ending in either "R301" or "R103". The black male was described as having a "Desert Eagle" .50 Caliber handgun on his lap. Due to the high caliber of the handgun, Officer Kim and I retrieved our issued "Colt M-4" machine guns from the trunk of our vehicle and we responded with Officer Laval to the area of Market and Taylor.

After we arrived in the area, we began a systematic search of the surrounding streets. At approximately 1148 hours, we were traveling North on 6th St. at Market St. when we observed a white Ford Taurus stopped at a red light w/b on Market at Taylor St. The Taurus had tinted windows and we could see that a black male was driving the vehicle. Upon closer inspection, we noticed the plate ending in "R301". We believed that this was the vehicle matching the earlier broadcast. I called a "Code-33" (Request to clear the channel). I put out the information to Communications as the vehicle made a right turn onto Taylor St. from Market St. We pulled behind it where Officer Laval turned on our vehicle's emergency lights and siren to effect a "felony stop". The vehicle stopped in front of 25 Taylor. Officer Laval exited our vehicle on the left side, and Officer Kim and I exited the vehicle on the right side. Officer Meehan #109, 3B7A pulled along side of Officer Laval. With our rifles drawn, Officer Laval ordered the suspect out of the vehicle. The suspect, B-1 Northcutt, complied with Officer Laval's orders and was proned out on the ground.

Officer Kim and I moved forward to conduct a "protective sweep" of the vehicle for any outstanding suspects. Due to the dark tint covering the windows, Officer Kim and I had to open each door and the liftgate to "clear" the vehicle. During our "protective sweep" Officer Kim and I noticed what appeared to be a black colored handgun, lying on the floorboard, with the tip of the barrel protruding from underneath the right front passenger seat. We left the handgun there and continued to visually clear the vehicle. There wasn't anyone else in the vehicle. We advised Sgt. Bush 3J101, #545, and Lt. Hofmann 3J202, #2147, who were on scene, of the location of the handgun. Officer Recinos 3J13A, #993, and Sgt. Bush took photo's of the placement of the handgun with department issued cameras, which were captured on floppy disks (E-1).

The driver of the vehicle, B-1 Northcutt, was placed under arrest and transported to Tenderloin Police Station (TTF) by Officer Laubach 3A30,#728. Lt. Hofmann directed me to drive the Taurus back to TTF. We responded to TTF for our follow up investigation. Lt. Hofmann advised me that the reportee that called in the initial information was Officer Nocetti #394. Officer Nocetti received information regarding the vehicle and information from a source detailed in a statement form that Officer Nocetti later completed and booked at TTF.(E-3) Lt. Hofmann also told me that the suspect, Northcutt, was a person of interest to the SFPD Gang Task Force, and that GTF would be responding to TTF to take charge of the investigation. Officer Meehan advised me that Northcutt made a spontaneous statement to him at the scene of the arrest. Officer Meehan memorialized that statement on a statement form that he later completed and was booked by Officer Laval at TTF.

The vehicle, F-1, was inventoried by Officer Kim. Officer Kim, using latex gloves, seized the handgun(E-4), from underneath the right front passenger seat and placed it into a cardboard box. I took the box from Officer Kim and brought it to the Lt.'s office at TTF. I took a photo of the gun with the case number next to it. The photo is on disk#2, which was booked into evidence at TTF(E-1) by Officer Laval. I notified CSI to process the handgun, and Inspector Gee #574 responded to TTF and took custody of the handgun. Officer Laval had earlier checked the handgun on the computer but a

record could not be located. The vehicle, F-1, was towed to Auto Return with a hold for GTF.

Inspector Bosshard #1585, Officer Do #53, and Officer Murray #4032 responded to TTF from the Gang Task Force Unit. They took charge of the investigation and interviewed the suspect, Northcutt. Officer Laval and I reviewed Northcutt's "rap sheet" and noted that he had numerous prior arrests for firearms and narcotics violations. We also noted that he was an ex-felon in possession of a firearm. After their interview with Northcutt, GTF placed an additional charge of 186.22 P.C. with the approval of Sgt. Mar #1829. Northcutt was booked at TTF per the listed charges.

SAN FRANCISCO POLICE DEPARTMENT | INCIDENT REPORT *STATEMENT*
page 6 of 7

INCIDENT NO.

| 0 | 7 | 0 | 7 | 5 | 4 | 9 | 8 | 6 |

| NAME (LAST, FIRST, MIDDLE) OF PERSON GIVING STATEMENT | DOB/AGE | RESIDENCE PHONE (DAY / NIGHT) | BUSINESS PHONE (DAY/NIGHT) |
|---|---|---|---|
| OFFICER ANDREW MEEHAN, #109 | | ( ) | ( ) |

| RESIDENCE ADDRESS / CITY IF NOT SAN FRANCISCO | ZIP CODE | BUSINESS ADDRESS / CITY IF NOT SAN FRANCISCO | ZIP CODE |
|---|---|---|---|
| | | | |

| DATE OF STATEMENT | TIME STARTED | TIME COMPLETED | LOCATION WHERE STATEMENT TAKEN | |
|---|---|---|---|---|
| 7/26/07 | 1230 HRS | 1240 HRS | AT SCENE ☐ | OTHER: CO. B. |

| STATEMENT TAKEN BY (NAME / STAR) | IN PRESENCE OF |
|---|---|
| | OF. MADSEN #1166 |

On 07/26/2007, at 1148 hours I assisted 4T1E, Officer Madsen, #1166, on a felony traffic stop at 25 Taylor Street. We had information that the driver of the vehicle, a white Ford Taurus station wagon with tinted windows, later identified as Northcutt, Michael, was cruising the area and was armed with a handgun. After Northcutt was taken out of the vehicle and placed in handcuffs, I observed a black semi-automatic handgun under the front passenger seat. Northcutt asked, "Why am I under arrest?" I stated that we saw the gun in the car. Northcutt spontaneously stated, "Oh yeah. Well, that's all I got!"

I DECLARE, UNDER PENALTY OF PURJURY, THIS STATEMENT OF _____ 1 _____ PAGES IS TRUE AND CORRECT, BASED ON MY PERSONAL KNOWLEDGE.

SIGNATURE OF PERSON GIVING STATEMENT _____

SFPD 377 Q (05/93)

**SFPD Written Statement**                                    Case#070754986

On the above date at approximately 1045 hours I was contacted by a Confidential Reliable Informant, hereafter referred to as CRI, who stated that they observed a black male in possession of a firearm while he was driving in the 6th/Market St area. The CRI further added that this vehicle, which the black male was the driver and sole occupant, was a white Ford Taurus with a partial plate with the ending letter/numbers of R301. The CRI informed me that they observed the vehicle driving northbound on Taylor St toward Turk St within the past several minutes. Lastly, the CRI described the firearm as being similar to a "Desert Eagle."

After I spoke with the CRI, I now relayed the CRI's aforementioned information to Ofc Wong, Ofc Michaud and Lt Hoffman who are all assigned to the Tenderloin Station.

#394

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

# EXHIBIT B

21

22

23

24

25

26

27    Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Suppress Evidence
Seized from Search Warrant
<u>United States v. Northcutt</u> - CR-07-00669 SI

## State of California- City of San Francisco
# SEARCH WARRANT AND AFFIDAVIT
## (AFFIDAVIT)

I, Officer Kevin Murray #4032, swears under oath that the facts expressed by him in the attached and incorporated
(Name of Affiant)
Statement of Probable Cause, are true and that based there on he has probable cause to believe and does believe that
the person(s), property, and/or thing(s) described below is/are lawfully seizable pursuant to Penal Code Section 1524, as
indicated below, and is/are now located at the locations set forth below.  Wherefore, affiant requests that this Search
Warrant be issued.

_____ #4032 _____,        NIGHT SERVICE REQUESTED:  YES ( )    NO (XX)
(Signature of Affiant)

# (SEARCH WARRANT)
THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICE OFFICER OR PEACE
OFFICER IN THE CITY AND COUNTY OF SAN FRANCISCO, CA: proof by affidavit having been made before me by
Officer Kevin Murray, that there is probable cause to believe that the property, person(s), and/or things described
(Name of Affiant)
herein may be found at the locations set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524 as indicated
below by "X" (s) in that it:

____ was stolen or embezzled
_XX_ was used as the means of committing a felony
_XX_ is possessed by a person with the intent to use it as means of  committing a public offense or is possessed by another to
whom he or she may have delivered it for the purpose of concealing it or preventing its discovery.
_XX_ tends to show that a felony has been committed or that a particular person has committed a felony.
____ tends to show that sexual exploitation of a child, in violation of P.C. section 311.3 , or possession of matter depicting sexual
conduct of a person under the age of 18, in violation of P.C. section311.11 has occurred or is occurring.
____ There is a warrant to arrest a person.

YOU ARE THEREFORE COMMANDED TO SEARCH:
1. The person of Michael Northcutt (SF#544748)
2. The premise located at 639 Central Ave., in the City and County of San Francisco, CA.
Further described as a two story structure, that is painted off-white in color. The premise itself
is located on the West side of Central Ave.. Including all rooms, attics, basements and other
parts therein, the surrounding grounds and any garages, storage rooms, storage areas, trash
containers and outbuildings of any kind on the premise. The numbers 639 are affixed to the
front door.
FOR THE FOLLOWING PROPERTY; PERSON(S); AND/OR THING(S):
   1. FIREARMS, GUN MAGAZINES, GUN CLEANING EQUIPMENT, FIREARM HOLSTERS,
   AMMUNITION, AND INDICIA (E.G. UTILITY BILLS, LETTERS, AND OTHER
   CORRESPONDENCE IN THE NAME OF MICHAEL NORTHCUTT.
   2. ~~EVIDENCE OF STREET GANG MEMBERSHIP OR AFFILIATION WITH THE "CENTRAL
   DIVIS PLAYAS" (CDP), INCLUDING DOCUMENTS, PHOTOGRAPHS, DRAWINGS,
   WRITINGS, GANG PARAPHERNALIA (e.g. bandanas, jackets, t-shirts) AND GRAFFITI
   DEPICTING THE GANGS MEMBERS' NAMES, INTITIALS, LOGOS, MONIKERS, AND/OR
   SLOGANS~~

AND IN THE CASE OF PROPERTY AND/OR THINGS, TO SEIZE IT/THEM IF FOUND and bring
it/them forthwith before me, or this court, at the courthouse of this court. This Search Warrant
and incorporated Statement of Probable Cause was sworn to as true and subscribed before me
this  7th  day of  August , 2007, at 3:20 AM. (PM. Wherefore, I find probable cause for the
issuance of this Search Warrant and do issue it.

_____
(Signature of Magistrate)
NIGHT SEARCH APPROVED
Judge of the Superior Court # 301      City and County of San Francisco, California

THE ANNEXED INSTRUMENT IS A
CORRECT COPY OF THE ORIGINAL
ON FILE IN MY OFFICE
ATTEST: CERTIFIED

AUG 3 0 2007

GORDON PARK-LI, Clerk
Superior Court of California, County of San Francisco

(7/97)

## STATE OF CALIFORNIA-CITY AND COUNTY OF SAN FRANCISCO
## RETURN TO SEARCH WARRANT

OFF. _Kevin Murray #4032_ , being sworn, says that he/she conducted a search pursuant to the
(Name of San Francisco Police Officer)

below described search warrant:                    Search Warrant/Case number: _070-830-213_

Issuing Magistrate: _Honorable Judge Bosch_ .

Magistrate's Court: Municipal/(Superior)# _301_ , City and County of San Francisco.

Date of Issuance: _8/7/07_ .
Date of Service : _8/15/07_ .
and searched the following location (s) , Vehicle (s) , and person (s):
_639 Central_
_Michael Northcutt_

and seized the following items:
_Two Guns, Ammunition, SUSP. Crack Cocaine, SUSP. Marijuana, Indicia, Cell Phone_

I further swear that this is a true and detailed account of all the property taken by me pursuant to the
search warrant  and that pursuant to Penal Code Sections 1528 and 1536 this property will be
retained in my custody , subject to the order of this court or of any other court in which the offense in
respect to which the seized property is triable.

Be advised that pursuant to California Penal Code Sections 1539 and 1540, you may file a written
motion in the court of the above-named magistrate who issued the search warrant, seeking the return
of the property seized pursuant to this warrant. For further information concerning this search warrant
contact _off. K Murray #4032_ at telephone number _553-1401_ .
        (Name of Officer)

_K M #4032_
        (Signature of Affiant)

Sworn to and subscribed before me this _29th_ day of _August_ , 2003

_JOHN J. CONWAY_
        (Signature of Magistrate)
Judge of the Municipal/Superior Court
City and County of San Francisco,
State of California

((06/99)                              2

## Statement of Probable Cause of Officer Kevin Murray #4032

My name is Kevin Murray. I am currently employed as a police officer in and for the City and County of San Francisco, California. I have been so employed for more than twelve years. I am currently assigned to Gang Task Force. My primary responsibilities are to investigate gang-related crimes, specifically focusing on African-American gangs in the Western Addition of the City and County of Can Francisco. My tasks include identifying and photographing active gang members, documenting gang members activities, investigating gang related crimes, working with the Homicide Unit to solve gang related crimes, working with and assisting probation and parole departments to ensure gang members are in compliance with their conditions of supervised release and working with various outside law enforcement agencies regarding gang-related issues.

While assigned to Gang Task Force I have performed a wide variety of investigative procedures in connection with solving crime, suppressing crime and preventing future crimes. I have successfully completed the following training courses over the past eleven years:

1. F.B.I. Basic Swat School 40 hrs.
2. SFPD Basic Swat School 80 hrs.
3. SFPD Specialist School 80 hrs.
4. SFPD Arrest and Control-Plain Clothes Officer Tactics 24 hrs
5. Robert Presley Institute of Criminal Investigations Course (I.C.I.) DOJ 76 hrs.
7. Known Gangs Conference 2006 16 hrs.

During the course of my employment, I have participated in hundreds of arrests for various Health and Safety code violations as well as numerous firearms arrests. I have participated in numerous buy/bust operations acting as a close cover officer as well as an investigation officer. Additionally, I have utilized informants to assist narcotic investigations and have participated in many search warrants and arrests involving weapons and narcotics violations in the San Francisco Metropolitan area. I have worked with and continue to utilize the assistance of various law enforcement agencies including DEA, ATF, BNE, and California Department of Parole.

On 07/26/2007, at approx. 1045 hours, Off. Nocetti #394 was contacted by a Confidential Reliable Informant, hereafter referred to as CRI., who stated that they observed a Black male in possession of a firearm while he was driving in the 6th/Market St area. The CRI further added that this vehicle, which the Black male was the solo occupant, was a white Ford Taurus with a partial plate with the ending letters/numbers of R301. The CRI said that they observed the vehicle driving Northbound on Taylor St. toward Turk St. within the past several minutes of speaking with Off. Nocetti. The CRI described the firearm as being similar to a "Desert Eagle" handgun. Off. Nocetti then relayed the CRI information to Tenderloin Station.

Tenderloin Station contacted Communications Division who broadcast the suspect and suspect vehicle description. Off. Madsen #1166, Off. Laval #4016 and Off. Kim #975 saw a vehicle matching the description near 6th and Market (white Ford Taurus with tinted windows, CA Lic#5YFR301, Black male driver). They activated their lights and siren. With the assistance of Off. Meehan #109, they conducted a "felony stop" of the vehicle as it stopped at 25 Taylor. Off. Laval ordered the driver, Michael Northcutt, out of the vehicle. Northcutt complied with Off. Laval's orders and was proned out on the ground. Off. Madsen and Off. Kim then conducted a "protective sweep" of the vehicle and saw a black handgun lying on the floorboard, with the tip of the barrel protruding from underneath the right front passenger seat. Northcutt was taken into custody and transported to enderloin Station. The handgun was seized and Insp. Gee #574 from CSI responded to Tenderloin Station and took custody of it.

Insp. Bosshard #1585, Off. Do #53 and I responded to Tenderloin Station for follow-up investigation. Off. Do read Northcutt his Miranda rights and Northcutt agreed to talk. Northcutt said he

(7/97)

had been driving the car for the past three days but had no knowledge of the gun. He said he still stays at 639 Central Ave. Northcutt was booked at Tenderloin Station.

· On 07/27/07 I presented the case to Assistant District Attorney Pamela Hansen for rebooking. ~~Northcutt was rebooked for 12021(a)(1) PC, 12026(a)(1) PC.~~

On 07/31/07 at 0035 Northcutt posted $60,000 Bail and was released from County Jail.

A computer check revealed Northcutt's SF Rap address and California DMV address as 639 Central Ave. A criminal history check revealed that Northcutt is recently off parole and has two prior felony convictions on 11351.5 H&S and 11352(a) H&S.

On 08/02/07, Off. Do and I responded to 639 Central Ave. and located Northcutt's residence. I obtained the description of the residence by looking at the residence and established it as Northcutt's residence by seeing the numerals 639 affixed to the front door of the building.

Michael Northcutt is a documented gang member of the criminal street, Central Divis Playas (CDP).

Based on the above information, I believe that Michael Northcutt was in possession of the recovered handgun. Through my training and experience I know that gang members will often keep additional firearm related evidence in their residences.

Based on the above information, and my training and experience I fully believe that additional evidence, further described as:

1. FIREARMS, GUN MAGAZINES, GUN CLEANING EQUIPMENT, FIREARM HOLSTERS, AMMUNITION, AND INDICIA (E.G. UTILITY BILLS, LETTERS, AND OTHER CORRESPONDENCE IN THE NAME OF MICHAEL NORTHCUTT.

~~2. EVIDENCE OF STREET GANG MEMBERSHIP OR AFFILIATION WITH THE "CENTRAL DIVIS PLAYAS" (CDP), INCLUDING DOCUMENTS, PHOTOGRAPHS, DRAWINGS, WRITINGS, GANG PARAPHERNALIA (e.g. bandanas, jackets, t-shirts) AND GRAFFITI DEPICTING THE GANGS MEMBERS' NAMES, INITIALS, LOGOS, MONIKERS, AND/OR SLOGANS, will be located in Michael Northcutt's home address.~~

Based on my training and experience, the possessor of the seized firearms will have the items described above at the sought after location to be searched. I believe that the seizure of the evidence described above will establish that Michael Northcutt possessed the firearm prior to the actual arrest.

Based on the above information I request that the issuing magistrate authorize the search of:

1. The person of Michael Northcutt (SF#544748)
2. The premise located at 639 Central Ave., San Francisco, CA. Further described as a two story building, off-white in color and the numerals 639 affixed to the front door.

Wherefore, affiant respectfully requests that a search warrant be issued, commanding the immediate search of the persons and premise above designated for the property or things above described and that such property be brought before a magistrate or retained as provided in Section 1536 of the California Penal code.

_____ #4032

(Affiant)

Sworn to as true and subscribed before me on

_____ Aug 7, 2007.
Judge of the Superior Court in and for the
City and County of San Francisco,
State of California.

(7/97)