Richard A. Tamor, Esq.
TAMOR & TAMOR
1901 Harrison St., 9th Floor
Oakland, CA 94612
Tel. (510) 874-4170
Fax (510) 874-4174
web: www.TamorLaw.com

Attorneys for Defendant,
Michael Northcutt

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. CR-07-00669 SI |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | NOTICE OF MOTION AND MOTION TO DISCLOSE CONFIDENTIAL INFORMANT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| MICHAEL NORTHCUTT, | ) | |
| Defendant. | ) | Date: May 23, 2008<br>Time: 11:00 a.m.<br>Dept.: Hon. Susan Illston |

TO:   JOSEPH RUSSONIELLO, UNITED STATES ATTORNEY; ANDREW CAPUTO, ASSISTANT UNITED STATES ATTORNEY

PLEASE TAKE NOTICE that on May 23, 2008, at 11:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, defendant Michael Northcutt, by and through his counsel, will move the court for an order compelling disclosure of the true identity and present whereabouts of the informant in the above case, or in the alternative, conducting an in camera hearing, or dismissing the accusatory pleading.

This motion is made on the grounds that the informant has information that is material

to the defense and is therefore essential to a fair determination of the cause.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant Michael Northcutt requests that this court compel disclosure of the identity of the confidential informant who provided information to Officer Nocetti, which resulted in the search and seizure of Mr. Northcutt and his vehicle. The disclosure of the informant's identity, address, and matters relating to credibility and reliability is mandated because the informant is the sole percipient witness to the alleged crime, and his credibility and reliability are relevant to probable cause. Alternatively, should this court deny disclosure, it should conduct an *in camera* hearing because Mr. Northcutt has made at least the "minimal threshold" showing for the hearing.

### II. STATEMENT OF FACTS

According to San Francisco Police Department Incident Report number 070754986 (Exh. "A"), on July 26, 2007, at 11:13 a.m., San Francisco Police Officers Laval (#4016) and Kim (#976) received information from their Communications Division that "a black male adult was driving a white Ford Taurus station wagon in the area of Market St. and Taylor St." Communications described the vehicle as having tinted windows with a license plate ending in either "R301" or "R103." Further the black male was described as having a "Desert Eagle" .50 caliber handgun on his lap.

At 11:48 a.m., while driving north on Sixth Street at Market, the officers saw a white Ford Taurus stopped for a red light northbound on Market at Taylor. Though the Taurus had tinted windows, they could see that a Black man was driving. The car's license plate ended in R301. Officers Laval and Kim effected a "felony stop." As the two officers exited their vehicles, Officer Meehan (#109) pulled his vehicle alongside, and with their machine guns drawn, ordered the

-2-

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Disclose Informant's Identity
United States v. Northcutt - CR-07-00669 SI

driver, Michael Northcutt, out of the vehicle. He complied with their orders and laid prone on the ground.

The officers did a "protective sweep" of the vehicle "for any outstanding suspects." "Due to the dark tint covering the windows," the officers "had to open each door and the lift gate to 'clear' the vehicle." While doing so, they noticed the barrel tip of a black handgun protruding from underneath the right front passenger seat.

They arrested Mr. Northcutt, took photos, and seized the gun, a Baretta.

The officers later learned that the source of information was San Francisco Police Officer Nocetti (#394), who in turn obtained the information from a "confidential reliable informant" ("CRI"). Other than to characterize him as "reliable," the Incident Report provides no other information about the "CRI." The CRI told Officer Nocetti that "they observed a black male in possession of a firearm while he was driving in the 6th/Market St. Area." The CRI further stated that "the vehicle, which the black male was the driver and sole occupant," was a white Ford Taurus with a partial plate ending with "R301." Finally, the vehicle was northbound on Taylor St. toward Turk St. within the past several minutes, and that the firearm was similar to a "Desert Eagle."

At the Tenderloin Station where Mr. Northcutt was subsequently taken, he denied knowledge of the gun, even though he had been driving the vehicle for three days. (See Warrant Affidavit, Exh. "B"). As a result of the firearm found in Mr. Northcutt's vehicle, the police officers sought, and obtained, a search warrant to search Mr. Northcutt's residence for weapons-related evidence. (Exh. "B").

///

///

///

-3-

## II. DISCUSSION

A. **THIS COURT SHOULD COMPEL DISCLOSURE OF THE INFORMANT'S IDENTITY AND OTHER INFORMATION BECAUSE HE WAS A PERCIPIENT WITNESS TO THE ILLEGAL ACTIVITY CHARGED IN THE INDICTMENT**

   1. **This Court Should Compel Disclosure of the Informant's Identity Since He is the Sole Percipient Witness of Material Facts Relevant to Mr. Northcutt's Guilt or Innocence**

In *Roviaro v. United States*, 353 U.S. 53 (1957), the seminal opinion regarding the disclosure of confidential information, the United States Supreme Court established that when the government has made a claim of privilege to withhold the identity of a person who has furnished information to it, and charges have been filed against an accused, the situation then

> ...calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id*. at 63.

In *Roviaro*, the defendant entered the front passenger seat of the car that the confidential informant was driving. A law enforcement agent was secreted in the trunk of the vehicle. The agent could hear the defendant directing he informant where to drive. The defendant also asked about money that the informant owed him, and told the informant that he brought "three pieces." Other agents followed in their own cars. The informant drove to a location where the defendant exited the car and picked up a small package. The defendant returned to the car, placed the package inside, and walked away. A law enforcement agent immediately retrieved the package, which contained heroin, from the floor of the car. *Id*. at 56-58.

The Supreme Court reversed the district court's denial of the defendant's request for

–4–

disclosure of the informant's identity. *Id*. at 54. While the high court acknowledged that there was "no fixed rule" with respect to when disclosure is required, it found that the privilege of confidentiality is limited by the "fundamental requirements of fairness." *Id*. at 60-62. Revealing the informant's identity was mandated by the particular circumstances of that case. The defendant and the informer had been together shortly before the defendant's arrest. The informer "helped set up the commission of the crime and...was present at its occurrence." *Id*. Additionally, the informant was "a participant in and a material witness to" the sale of heroin charged in one count. *Id*. at 65, n.15. These circumstances made the informant's "possible testimony... highly relevant," and "might have been helpful to the defense." *Id*. at 63-64. Because of the nature of the crime, it was likely that only the accused and the informant would have been witnesses, and thus unless the accused "...waived his constitutional right not to take the stand in his own defense, [the informer] was his one material witness." *Id*. at 64. The opportunity to cross-examine a police officer "...was hardly a substitute for an opportunity to examine the man who had been nearest to [the defendant] and took part in the transaction." *Id*. Moreover, "[t]he desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." *Id*. The centerpiece of the *Roviaro* rule, therefore, is that "...where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [to maintain the name and communication secret] must give way." *Id*. at 60-61.

The Ninth Circuit and other circuits have construed *Roviaro* to require the disclosure of a confidential informant who was either a participant in, or a percipient witness to, a charged offense. In *United States v. Hernandez*, 608 F.2d 741, 744 (9th Cir. 1979), the Ninth Circuit articulated "the distinction that our decisions have drawn between those situations wherein an informant's role was

−5−

merely peripheral, and, in contrast, those situations wherein the informant actually witnessed the crime, or, as here even helped instigate the criminal transaction." Because the informant in *Hernandez* "was a participant in the events that were critical to the prosecution's case, no claim could be raised under *Roviaro*, nor was it raised, that [the informant]'s identity could be lawfully withheld from the appellants." *Id*.

Similarly, in *United States v. Bonilla*, 615 F.2d 1262, 1263 (9th Cir. 1980), the Ninth Circuit stated that the defendant "was entitled to learn the informant's identity, because the informant was a percipient witness to the criminal transaction underlying his conviction." *See also, United States v. Skeens*, 449 F.2d 1066, 1071 (D.C. Cir. 1971) and cases cited therein (lower courts consistently have held that *Rovioro* requires disclosure of an informant who "was an active participant or was present at the scene of the crime"); *United States v. Cervantes*, 542 F.2d 773, 775 (9th Cir. 1976) ("The Government acknowledges that the informant [] was a percipient witness to the transaction. It therefore supplied Cervantes with the informant's identity."). Indeed, disclosure is required especially where the informer is the **only** percipient witness to the transaction, or crime, other than the accused. *Roviaro*, 353 U.S. at 64.

Over the years, the cases have distinguished a "mere tipster" from a person who was a percipient witness, or an actual participant in the offense charged. *See, generally, United States v. Sai Queng Wong*, 886 F.2d 252, 254-55 (9th Cir. 1989); also *United States v. Warren*, 42 F.3d 647, 653 (D.C. Cir. 1994) ("We have long adhered to the rule that *Rovioro* does not require disclosure of an informant who is not an actual participant in or a witness to the offense charged.") Courts have indicated that the accused who seeks disclosure of an informant "...must explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to a material issue of guilt or innocence." *United States v. Blevins*, 960 F.2d

—6—

1252, 1259 (4th Cir. 1992). Under the Ninth Circuit's formulation, the accused must show that "...he has more than a 'mere suspicion' that the informant has information which will prove 'relevant and helpful' or will be essential to a fair trial." *U.S. v. Amador-Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993).

In the present case, the informant claimed to be a percipient witness to the crime: "I was contacted by a Confidential Reliable Informant, hereinafter referred to as CRI, who stated that they **observed a black male in possession of a firearm**..." (Exh. "A"). Mr. Northcutt, however, asserts that he had no knowledge of the firearm that was found in the vehicle that he had been driving. Other than Mr. Northcutt, the informant appears to be the **only** witness as to whether or not Mr. Northcutt had prior possession of the firearm found in the vehicle. Thus, the informant's observations are **material** to Mr. Northcutt's guilt or innocence with respect to possession of the firearm.

### 2.   This Court Should Compel Disclosure of Informant's Address

An unsupported refusal to allow any inquiry into an informer's address has been deemed error. *United States v. Harris*, 501 F.2d 1 (9th Cir. 1974). The Ninth Circuit has reiterated that an inquiry into an informer's identity and address may be critical, particularly where the informer is a witness, or the agent-instigator of the criminal transaction. *Hernandez*, 608 F.2d at 744-45.

In the present case, the witness was allegedly a percipient witness to the crime charged, at the time s/he provided information to Officer Nocelli. The informant's address is relevant to whether or not s/he was in a position to observe whether or not Mr. Northcutt possessed the firearm, or had a particularized knowledge of Mr. Northcutt's activities, based on the informant's contact with potential sources of information.

///

-7-

///

### 3. This Court Should Compel Disclosure of Evidence Bearing on the Informant's Credibility and Reliability

It is axiomatic that evidence bearing on the credibility of an informant, which is either known or reasonably available to the government, must be disclosed. This includes agreements entered into between the government and an informant. *See United States v. Bagley*, 473 U.S. 667-676 (1985). Disclosure of some benefits does not relieve the government of its obligation to disclose others. *See, Benn v. Lambert*, 283 F.3d 1040, 1058 (9th Cir. 2002) ("The undisclosed benefits that [the informant] received added significantly to the benefits that were disclosed and certainly would have 'cast a shadow' on [the informant's] credibility."). Even the expectation of leniency should be revealed. *Belmontes v. Woodford*, 335 F.3d 1024, 1043 (9th Cir. 2003). A person's status as a paid informant has been deemed by the United States Supreme Court to qualify the information concerning the payment as "evidence favorable" to that defendant. *Banks v. Dretky*, 540 U.S. (2004).

*Brady v. Maryland*, 373 U.S. 83 (1963) has been interpreted to require disclosure of impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 154 (1972). As the Ninth Circuit has stated, "Material impeachment evidence of the key [government] witness is equally subject to the disclosure requirements of *Brady*." *Silva v. Woodford*, 279 F.3d 825, 855 (9th Cir. 2002).

Finally, issues relating to the informant's credibility and reliability go directly to Mr. Northcutt's Fourth Amendment rights and defenses relating to unlawful searches and seizures. Officer Nocetti gave the directive to stop Mr. Northcutt, and his directive was based solely on information provided by a "CRI," based on the CRI's observations. (Exh. "A") The stop and search of Mr. Northcutt's vehicle led to the search warrant for his residence and provided the requisite

Case 3:07-cr-00669-SI    Document 26    Filed 04/25/2008    Page 9 of 20

probable cause. (Exh. "B") Apart from this tip, none of the officers, including Officer Nocetti, had reason to suspect Mr. Northcutt of illegal conduct.

Courts will uphold an investigatory stop based on a tip or other secondary information only when the information possesses sufficient indicia of reliability that are independently corroborated by the police. *United States v. Thomas*, 211 F.3d 1186, 1190 (9th Cir. 2000). However, the police in this case were unable to corroborate any of the information provided by the informant, other than the suspect's readily observable location and appearance.

In *Florida v. J.L.*, 529 U.S. 266 (2000), the Supreme Court held that information from an untested informant that is merely descriptive, not predictive, cannot support reasonable suspicion:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*J.L.*, 529 U.S. at 272. "That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the [stop], had a reasonable basis for suspecting [defendant] of engaging in unlawful conduct," since "[t]he reasonableness of official suspicion must be measured by what the officers knew before the conducted their search." *Id*. at 271.

In *Warden v. Williams*, 407 U.S. 143, 146-147 (1972), the informant gave merely descriptive, not predictive, information about the suspect, similar to the type of information provided in our case. The Supreme Court found that the officer reasonably relied on the informant in that case because the informant was known to the officer personally, had provided information in the past, and informant came forward personally to give information that was immediately verifiable at the scene. *Id*. at 146.

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Disclose Informant's Identity
United States v. Northcutt - CR-07-00669 SI

The key distinction between *J.L.* and *Williams*, then, is the anonymity of the informant in *J.L.*, and the known and tested reliability of the informant in *Williams*. In this case, therefore, the reasonableness of the stop turns on the reasonableness of Officer Nocetti's reliance on the CRI. Unlike *Williams*, however, the Incident Report in this case provides no factual information about the informant. All Officer Nocetti states in the report is that he "was contacted by a Confidential Reliable Informant." Other than characterizing the informant as "reliable," Officer Norcetti gives no further information about the informant. We do not know who the informant is, or when, where, or how this informant knew of the information. We do not know if this informant has provided reliable information in the past, or if credibility issues surround him. Accordingly, any violation of Mr. Northcutt's Fourth Amendment rights turns on the informant's credibility and reliability.

**B.    ALTERNATIVELY, THE COURT SHOULD CONDUCT AN *IN CAMERA* HEARING**

If the court declines to order disclosure of the informants' identities outright, Ninth Circuit precedent *requires* that an *in camera* hearing be conducted to determine whether the informant's testimony would be helpful to the defendants. *United States v. Ramirez-Rangel*, 103 F.3d 1501, 1508 (9th Cir. 1997)(overruled on other grounds by *Watson v. United States*, 128 S. Ct. 579 (2007); *see also, Amador-Galvin*, 9 F.3d at 1417. An *in camera* hearing "may provide many of the same benefits as disclosure itself, particularly where defendant's counsel is allowed to participate under an order not to reveal any information disclosed in chambers." *United States v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993). Unlike actual disclosure, "an *in camera* hearing bears little risk of disclosing the identity of the informant and does not jeopardize the government's future use of that individual." *Id*. The defendant must make only "a minimal threshold showing" that the informant's

-10-

identity would be "relevant to at least one defense." *Id*.

In *United States v. Fixen*, 780 F.2d 1434, 1439-1440 (9th Cir. 1986), the court stated that where the identity of the informant bears only on probable cause and does not require its disclosure, an *in camera* hearing would accommodate the defendant's needs:

> The *in camera* procedure provides an equally-acceptable accommodation of the competing interests of the government and the accused in the situation presented here, wherein the question is whether a law enforcement officer has lied. Through disclosure of the informer's identity to the trial judge, and such subsequent inquiries by the judge as may be necessary, the government can be protected from any significant, unnecessary impairment of secrecy, yet defendant can be saved from what could be serious police misconduct.

*Id*.

In the present case, the credibility of the informant bears on both Mr. Northcutt's guilt or innocence, as well as reasonable suspicion/probable cause for the stop and subsequent search of his residence. Other than Mr. Northcutt, the informant is the sole witness as to whether Mr. Northcutt possessed and knew of the firearm found in the vehicle he was driving. The reasonableness of the stop also turns on the informant's reliability. Accordingly, should this court deny disclosure of the informant's identity, at the very least, it should conduct an *in camera* hearing.

### III. CONCLUSION

Based on the foregoing, Mr. Northcutt respectfully requests that this court disclose the informant's identity, address, and matters relating to his credibility and reliability, or alternatively, conduct an *in camera* hearing.
-11-

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Disclose Informant's Identity
United States v. Northcutt - CR-07-00669 SI

| | |
|---|---|
| Dated: April 25, 2008 | Respectfully Submitted,<br>TAMOR & TAMOR |
| | _____/s/_____<br>Richard A. Tamor, Esq.<br>Attorneys for Defendant,<br>Michael Northcutt |

-12-

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Disclose Informant's Identity
United States v. Northcutt - CR-07-00669 SI

# EXHIBIT A

-13-

Notice of Motion, Motion, and Memorandum of Points and Authorities in Support of Motion to Disclose Informant's Identity
United States v. Northcutt - CR-07-00669 SI

# San Francisco Police Department
## INCIDENT REPORT

**Report Type:** Initial
**Report No.:** 070754986

### INCIDENT

| Incident Number | Occurrence from Date/Time | Occurrence to Date/Time | Reported Date/Time | CAD Number |
|---|---|---|---|---|
| 070-754-986 | 07/26/07 11:13 | 07/26/07 11:13 | | 072071401 |

**Type of Incident:** Firearm, Possession of Loaded -12100, Firearm, Loaded, in Vehicle, Possession or Use -12168, Firearm, Possession By Prohibited Person -12080

**Location of Occurrence:** Market Street
**At Intersection with/Premise type:** Taylor Street Street, (Not Sidewalk)

| Confidential Report? | Arrest Made? ☑ | Suspect Known? | Suspect Unknown? | Non-Suspect Incident? | Domestic Violence? | (Type of Weapon Used) | Reporting Unit 4T1E |
|---|---|---|---|---|---|---|---|

**Location Sent:** On view

| How Cleared? 6 | Reported to Bureau: Crime Scene Invest. | Name: Gee | Star: 574 | Date/Time: 07/26/07 12:40 | Elder Victim | Gang Related? ☑ | Juvenile Subject? | Prejudice Based? |

### OFFICER DECLARATION

I declare under penalty of perjury, this report of _7_ pages is true and correct, based on my personal knowledge, or is based on information and belief following an investigation of the events and parties involved.

**PROP 115 CERTIFIED    5 YEAR/POST    Signature:** _[signature]_

**Reporting Officer:** MARK H. MADSEN   **Star:** 1166   **Station:** Crime Prevention Co.   **Watch:** 0700-1700

**Reviewing Sgt:** Sgt. Glenn Mar # 1829   CPC / Tactical Unit   **Station:** Crime Prevention Co.   **Watch:** 0700-1700

**OIC:** Sgt. Glenn Mar # 1829   CPC / Tactical Unit   **Station:** Tactical Co.   **Watch:** 0700-1700   **Date:** 07/26/07

**Related Case:** _Assigned to_ 5G200   **Assigned to:** 5G200   **Assigned by:** 1829
**Copies to:** 5G200 5G200 5G200   **Add'l Copies:** TTF, DA2

### REPORTEE

| Code: R | Name: SFPD #394, | | Alias |
| Day Phone: (415) 345-7300 | Type | Home Address | City | State | Zip Code |
| Night Phone | Type | Work Address: Tenderloin Police Station | City | State | Zip Code |

### BOOKED 1

| Code: B 1 | Name: Northcutt, Michael D. | | Alias |
| Day Phone | Type | Home Address: 639 Central | City: San Francisco | State: CA | Zip Code |
| Night Phone | Type | Work Address | City | State | Zip Code |

| DOB Unknown | Date of Birth: 10/15/80 | Age: 26 | or age between: | Race: B | Sex: M | Height: 6'03 | Weight: 200 | Hair Color: BLK | Eye Color: BRO |

**SFNO:** 544748   **J/D# (if Juvi.):**   **ID Type/Jurisdiction/Number:** DL CA D1388448

**Book Section #1:** N/W 12021a.1PC   **#2:** N/W 12025b.1PC   **#3:** N/W 12025b.6PC   **#4:** 12031a.1PC   **#5:** 186.22 PC
**Booking Location:** Tenderloin Station

**Warrant #** | **Court #** | **Action #** | **Dept** | **Enroute to** | **CWB Check:** Lena  **Star:** 56

**Warrant Violation(s):**   **Bail:**   **Mirandized** ☑   **Star** | **Date:** 07/26/07 | **Time** | **Statement** ☑

**Citation #** | **Violation(s):**   **Appear Date/Time** | **Location of Appearance**

**Book/Cite Approval:** Sgt. Mar   **Star:** 1829   **Mass Arrest Code** | **M X-Rays** ☐ | **School (if Juvenile)** | ☐ CA Form Booked Copy Attached

**Other Information:** Citation/Warrant/Booking Charge(s)/Missing Person-Subject Description; Scars, Marks, Tattoos
Wearing white T-shirt, blue jeans, red boots

# San Francisco Police Department
## PROPERTY LISTINGS

**070754986**

| Code/No | Item Description | Brand | Model |
|---|---|---|---|
| EVD 1 | "Office Depot" 2HD IBM Format 1.44 MB Disks | Office Depot | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|
| | | | | | 2 | |

| Seized by (Star) | From Where |
|---|---|
| | |

Additional Description/Identifying Numbers
Disks containing photo's of the firearm taken by CSI from TTF. Beretta 96 .40 Caliber Serial #Ber012773M(E-4)

---

| Code/No | Item Description | Brand | Model |
|---|---|---|---|
| EVD 2 | SFPD Statement form #377G | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|

| Seized by (Star) | From Where |
|---|---|

Additional Description/Identifying Numbers
Written by Off. Meehan #109

---

| Code/No | Item Description | Brand | Model |
|---|---|---|---|
| EVD 3 | SFPD Statement form #377G | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|

| Seized by (Star) | From Where |
|---|---|

Additional Description/Identifying Numbers
Written by Off. Nocetti #394

---

| Code/No | Item Description | Brand | Model |
|---|---|---|---|
| EVD 4 | Black semi-auto handgun, loaded | Beretta | 96 |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|
| BER012773M | | .40 | BLK | | | |

| Seized by (Star) | From Where |
|---|---|
| 975 | Underneath the right front passenger seat of vehicle (F) |

Additional Description/Identifying Numbers

---

| Code/No | Item Description | Brand | Model |
|---|---|---|---|
| | | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|

| Seized by (Star) | From Where |
|---|---|

Additional Description/Identifying Numbers

---

| Code/No | Item Description | Brand | Model |
|---|---|---|---|
| | | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|

| Seized by (Star) | From Where |
|---|---|

Additional Description/Identifying Numbers

---

| Code/No | Item Description | Brand | Model |
|---|---|---|---|
| | | | |

| Serial No. | Gun Make | Caliber | Color | Narcotics Lab No. | Quantity | Value |
|---|---|---|---|---|---|---|

| Seized by (Star) | From Where |
|---|---|

Additional Description/Identifying Numbers

# San Francisco Police Department
# VEHICLE INFORMATION

**070754986**

VEHICLE CODES: B -BOOSTED; D -DAMAGED; F -USED FELONY; T -TOWED; U -USED OTHER; V -VANDALIZED; X -STRIPPED

### Vehicle 1

| Code | Plate No. | State | Reg Yr | Plate Type | VIN No. |
|---|---|---|---|---|---|
| F | 5YFR301 | CA | 2008 | PC | 1FAFP57S1WG256583 |

| Veh Year | Make | Model |
|---|---|---|
| 1998 | Ford | Taurus |

| Style | Color | Plates/VIN Match? | Plates Missing? |
|---|---|---|---|
| Station Wagon | White | ☑ | FRONT ☐ REAR ☐ |

**Condition:** APPARENTLY DRIVABLE ☑  BURNED? ☐  DAMAGED? ☐  STRIPPED? ☐

| Crime Scene Tech Notified? | 387 Form Given to Owner? | Tow Approved By (Name) | Star | Towed to (Name/Address) | Tow Check (Name) | Star |
|---|---|---|---|---|---|---|
| ☐ | ☐ | Sgt. Mar | 1829 | Auto Return | | |

**Hold For:** Other (narrative)

**Registered Owner:** Evans, Lakia
**Residence Address:** 968 Ellsworth
**City:** San Francisco
**State:** CA

### Vehicle 2

(blank)

### Vehicle 3

(blank)

**Incident# 070754986**

Page 3 of 7

# 070754986

## San Francisco Police Department
## NARRATIVE

While on directed patrol in the Mission District, Officer Laval #4016, Officer Kim #975 and I were redirected by our Communications Division to the Tenderloin District on a call of a man with a gun. We were in full uniform and in a marked patrol vehicle. Communications advised us that a black male adult was driving a white Ford Taurus station wagon in the area of Market St. and Taylor St. The vehicle had tinted windows and the license plate was described as ending in either "R301" or "R103". The black male was described as having a "Desert Eagle" .50 Caliber handgun on his lap. Due to the high caliber of the handgun, Officer Kim and I retrieved our issued "Colt M-4" machine guns from the trunk of our vehicle and we responded with Officer Laval to the area of Market and Taylor.

After we arrived in the area, we began a systematic search of the surrounding streets. At approximately 1148 hours, we were traveling North on 6th St. at Market St. when we observed a white Ford Taurus stopped at a red light w/b on Market at Taylor St. The Taurus had tinted windows and we could see that a black male was driving the vehicle. Upon closer inspection, we noticed the plate ending in "R301". We believed that this was the vehicle matching the earlier broadcast. I called a "Code-33" (Request to clear the channel). I put out the information to Communications as the vehicle made a right turn onto Taylor St. from Market St. We pulled behind it where Officer Laval turned on our vehicle's emergency lights and siren to effect a "felony stop". The vehicle stopped in front of 25 Taylor. Officer Laval exited our vehicle on the left side, and Officer Kim and I exited the vehicle on the right side. Officer Meehan #109, 3B7A pulled along side of Officer Laval. With our rifles drawn, Officer Laval ordered the suspect out of the vehicle. The suspect, B-1 Northcutt, complied with Officer Laval's orders and was proned out on the ground.

Officer Kim and I moved forward to conduct a "protective sweep" of the vehicle for any outstanding suspects. Due to the dark tint covering the windows, Officer Kim and I had to open each door and the liftgate to "clear" the vehicle. During our "protective sweep" Officer Kim and I noticed what appeared to be a black colored handgun, lying on the floorboard, with the tip of the barrel protruding from underneath the right front passenger seat. We left the handgun there and continued to visually clear the vehicle. There wasn't anyone else in the vehicle. We advised Sgt. Bush 3J101, #545, and Lt. Hofmann 3J202, #2147, who were on scene, of the location of the handgun. Officer Recinos 3J13A, #993, and Sgt. Bush took photo's of the placement of the handgun with department issued cameras, which were captured on floppy disks (E-1).

The driver of the vehicle, B-1 Northcutt, was placed under arrest and transported to Tenderloin Police Station (TTF) by Officer Laubach 3A30, #728. Lt. Hofmann directed me to drive the Taurus back to TTF. We responded to TTF for our follow up investigation. Lt. Hofmann advised me that the reportee that called in the initial information was Officer Nocetti #394. Officer Nocetti received information regarding the vehicle and information from a source detailed in a statement form that Officer Nocetti later completed and booked at TTF.(E-3) Lt. Hofmann also told me that the suspect, Northcutt, was a person of interest to the SFPD Gang Task Force, and that GTF would be responding to TTF to take charge of the investigation. Officer Meehan advised me that Northcutt made a spontaneous statement to him at the scene of the arrest. Officer Meehan memorialized that statement on a statement form that he later completed and was booked by Officer Laval at TTF.

The vehicle, F-1, was inventoried by Officer Kim. Officer Kim, using latex gloves, seized the handgun(E-4), from underneath the right front passenger seat and placed it into a cardboard box. I took the box from Officer Kim and brought it to the Lt.'s office at TTF. I took a photo of the gun with the case number next to it. The photo is on disk#2, which was booked into evidence at TTF(E-1) by Officer Laval. I notified CSI to process the handgun, and Inspector Gee #574 responded to TTF and took custody of the handgun. Officer Laval had earlier checked the handgun on the computer but a

Incident# 070754986                                                                                         Page 4 of 7

record could not be located. The vehicle, F-1, was towed to Auto Return with a hold for GTF.

Inspector Bosshard #1585, Officer Do #53, and Officer Murray #4032 responded to TTF from the Gang Task Force Unit. They took charge of the investigation and interviewed the suspect, Northcutt. Officer Laval and I reviewed Northcutt's "rap sheet" and noted that he had numerous prior arrests for firearms and narcotics violations. We also noted that he was an ex-felon in possession of a firearm. After their interview with Northcutt, GTF placed an additional charge of 186.22 P.C. with the approval of Sgt. Mar #1829. Northcutt was booked at TTF per the listed charges.

## SAN FRANCISCO POLICE DEPARTMENT — INCIDENT REPORT STATEMENT

| INCIDENT NO. | 07054986 |
|---|---|

| NAME (LAST, FIRST, MIDDLE) OF PERSON GIVING STATEMENT | DOB/AGE | RESIDENCE PHONE (DAY/NIGHT) | BUSINESS PHONE (DAY/NIGHT) |
|---|---|---|---|
| OFFICER ANDREW MEEHAN, #109 | | ( ) | ( ) |

| RESIDENCE ADDRESS / CITY IF NOT SAN FRANCISCO | ZIP CODE | BUSINESS ADDRESS / CITY IF NOT SAN FRANCISCO | ZIP CODE |
|---|---|---|---|
| | | | |

| DATE OF STATEMENT | TIME STARTED | TIME COMPLETED | LOCATION WHERE STATEMENT TAKEN |
|---|---|---|---|
| 7/26/07 | 1230 HRS | 1240 HRS | AT SCENE ☐ OTHER: CO. B. |

| STATEMENT TAKEN BY (NAME / STAR) | IN PRESENCE OF |
|---|---|
| | OFF. MADSEN #1166 |

On 07/26/2007, at 1148 hours I assisted 4T1E, Officer Madsen, #1166, on a felony traffic stop at 25 Taylor Street. We had information that the driver of the vehicle, a white Ford Taurus station wagon with tinted windows, later identified as Northcutt, Michael, was cruising the area and was armed with a handgun. After Northcutt was taken out of the vehicle and placed in handcuffs, I observed a black semi-automatic handgun under the front passenger seat. Northcutt asked, "Why am I under arrest?" I stated that we saw the gun in the car. Northcutt spontaneously stated, "Oh yeah. Well, that's all I got!"

I DECLARE, UNDER PENALTY OF PERJURY, THIS STATEMENT OF ___1___ PAGES IS TRUE AND CORRECT, BASED ON MY PERSONAL KNOWLEDGE.

SIGNATURE OF PERSON GIVING STATEMENT

**SFPD Written Statement**  Case#070754986

On the above date at approximately 1045 hours I was contacted by a Confidential Reliable Informant, hereafter referred to as CRI, who stated that they observed a black male in possession of a firearm while he was driving in the 6th/Market St area. The CRI further added that this vehicle, which the black male was the driver and sole occupant, was a white Ford Taurus with a partial plate with the ending letter/numbers of R301. The CRI informed me that they observed the vehicle driving northbound on Taylor St toward Turk St within the past several minutes. Lastly, the CRI described the firearm as being similar to a "Desert Eagle."

After I spoke with the CRI, I now relayed the CRI's aforementioned information to Ofc Wong, Ofc Michaud and Lt Hoffman who are all assigned to the Tenderloin Station.

#394